**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 25-24-DLB-CJS**

**AMANDA BANKS**                                                                          **PLAINTIFF**

**v.**                              <u>**MEMORANDUM OPINION AND ORDER**</u>

**ALLSTATE INSURANCE COMPANY, et al.**                           **DEFENDANTS**

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

This matter is before the Court on Defendant Allstate Insurance Company's Motion to Exclude Causation Testimony of Tyler Baker (Doc. # 37) and Motion for Partial Summary Judgment (Doc. # 38).  Plaintiff having responded to Allstate's Motions (Docs. # 45 and 46) and Allstate having filed its Replies (Docs. # 49 and 50), the Motions are ripe for the Court's review.  For the following reasons, both Motions are **denied.**

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This case emerges in the wake of a storm that swept through Northern Kentucky in late August of 2024.  The storm, which produced strong winds, caused a large tree to fall onto the roof of Plaintiff Amanda Banks's house in Alexandria, Kentucky.  (Doc. # 43-1 at 2).  At the time of the storm, Banks's home was insured by a policy (the "Policy") with Defendant Allstate Insurance Company ("Allstate").  (Doc. # 38-4 at 7).  Under the Policy, Allstate is obligated to cover "sudden and accidental direct physical loss to property" subject to certain limitations.  (Doc. # 38-4 at 30).

Shortly after the storm, Tyler Baker, a professional contractor and the owner of Fortress Solutions—a storm restoration firm—examined Banks's house.  (Doc. # 44 at

1

11:23-13:2).  Mr. Baker determined that the fallen tree had caused extensive damage to the house.  (Doc. # 44-2 at 2).  Specifically, Mr. Baker found that the tree impact had damaged the roof, gutter, roof sheathing, and truss.  (*Id.*).  Additionally, Mr. Baker noted that the falling tree had displaced the deck, caused interior drywall cracking, and damaged multiple doors, including the front door to the house.  (*Id.*).  Mr. Baker also determined that the tree impact damaged several bricks on the veneer of Banks's home.  (*Id.*; Doc. # 44 at 35:15-36:4).  However, Mr. Baker concluded that these bricks could not be repaired or replaced without replacing the entire brick veneer of Banks's house.  (Doc. # 44 at 36:5-37:21).  Mr. Baker specifically opined that compositional differences between the mortar used when the bricks were originally installed and present-day mortar meant that replacing individual bricks would compromise structural integrity.  (*Id.* at 37:7-21).  As a result, Mr. Baker's estimate for repair included rebricking the entire home.  (*Id.* at 40:5-8).

Allstate also inspected Banks's house shortly after the storm.  (Doc. # 38 at 1).  After this initial inspection, Allstate retained Amanda Moore-Roberson, a civil engineer, to perform an additional examination of the property and determine what damage was caused by the fallen tree.  (*Id.* at 2).  Ms. Moore-Roberson composed a report which stated that the fallen tree had damaged the house's roof, gutters, and truss.  (Doc. # 38-1 at 12).  However, unlike Mr. Baker's report, Ms. Moore-Roberson's report determined that any damage to the brick veneer was the "result of ordinary environmental expansion and contraction cycles" that "pre-dated the tree impact event."  (*Id.* at 13).  Similarly, Ms. Moore Roberson found that the tree impact could not have caused the displacement of the wood deck or damage to any of the doors.  (*Id.* at 15).  Based on this report, Allstate

2

declined to indemnify Banks for, among other things, damage to the brick veneer of her home or the displaced deck.  (Doc. # 43-3 at 1-25).

Unable to sway Allstate from its assessment of the damage, Banks filed the instant lawsuit.  Subsequently, Allstate retained Kate Dicks, a forensic engineer, to conduct an additional examination of Banks's house.  (Doc. # 43-1 at 2-3).  Upon reexamining the brick veneer, Ms. Dicks concluded that, contrary to Allstate's initial diagnosis, the tree impact had indeed damaged several bricks.  (*Id.* at 9).  However, Ms. Dicks opined that this damage did not require rebricking the entire home.  (*Id.*).  Rather, Ms. Dicks found that the damaged bricks should be replaced individually.  (*Id.*).

In its Motion for Partial Summary Judgment, Allstate seeks judgment as to Banks's contractual claims related to the brick veneer.  (Doc. # 38 at 2).  In addition, Allstate seeks to exclude the testimony of Banks's expert, Tyler Baker, related to causation.  (Doc. # 37 at 2).  Banks responded in opposition to these Motions (Docs. # 45 and 46), Allstate filed a Reply to each Response (Docs. # 49 and 50), and this matter is ripe for the Court's review.

## II.    ANALYSIS

### A.    Motion to Exclude Causation Testimony of Tyler Baker

Allstate moves to exclude any causation testimony offered by Banks's expert witness, Tyler Baker.  (Doc. # 37 at 2).  In so doing, Allstate argues that Mr. Baker lacks the qualifications to offer expert testimony and that any opinions he might espouse regarding causation would be neither relevant nor reliable.  (*Id.* at 3-4).  Thus, Allstate concludes, under Federal Rule of Evidence 702, Mr. Baker's proposed expert testimony is inadmissible.

Federal Rule of Evidence 702 provides that expert testimony is admissible so long as (1) the expert's knowledge will help the trier of fact to understand the evidence or determine a fact at issue, (2) the testimony is based upon sufficient facts or data, (3) the expert's opinion is the product of reliable principles and methods, and (4) the expert has applied these principles or methods reliably to the facts of the case.  Fed. R. Evid. 702. This language can be parsed into three requirements.  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008).  "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.'"  *Id.* at 529 (quoting Fed. R. Evid. 702).  Second, the proposed expert testimony must be relevant, in the sense that it will assist the trier of fact to understand the evidence or determine a fact at issue.  *Id.*  Finally, the testimony must be reliable.  *Id.*  The Supreme Court has explained that Rule 702 confers a "gatekeeping role" on trial courts to "ensur[e] that an expert's testimony rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  The proponent of the challenged expert opinion—Banks, in this case—bears the burden of establishing that these requirements are met by a preponderance of the evidence.  *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (citing *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008)).

### 1.    *Qualification*

First, Allstate claims that Mr. Baker is not qualified to offer his proposed opinion. Although Allstate acknowledges that Mr. Baker may be qualified "to talk about tree damage generally," it argues that he lacks the qualifications to testify as to "how energy was transferred to Plaintiff's home from the specific fallen tree and what damage was caused as a result."  (*Id.* at 3 (citing *Barber v. Milbank Ins. Co.*, No. 5:21-cv-213-KKC-

4

EBA, 2022 WL 13888469, at *2 (E.D. Ky. Oct. 19, 2022))).  Allstate notes—and Plaintiff acknowledges—that Mr. Baker lacks an engineering degree or background.  (*Id.*).  Instead, Mr. Baker's opinion is based on his experience as a general contractor, catastrophe claims adjuster, and disaster restoration specialist.  (*See* Doc. # 44-1 at 3).

An individual may qualify as an expert in light of his experience and knowledge, even without formal education.  *See Burgett*, 579 F. App'x at 377; *In re E.I. du Pont Nemours & Co. C-8 Personal Inj. Litig.*, 345 F. Supp. 3d 897, 902 (S.D. Ohio 2015) ("It is well-established that experience-based testimony satisfies Rule 702 admissibility requirements.) (citations omitted).  Indeed, "[t]he law does not require that an admissible expert have every conceivable qualification, only that his background provides a proper foundation for testimony which will 'assist the trier of fact in understanding and disposing of issues relevant to the case.'"  *Faughn v. Upright, Inc.*, No. 5:03-cv-237-TBR, 2007 WL 854259, at *1 (W.D. Ky. Mar. 15, 2007) (quoting *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000)).  The Sixth Circuit has recognized that both scientific and non-scientific expert testimony are appropriate under Rule 702.  *Berry v. City of Detroit*, 25 F.3d 1342, 1349-50 (6th Cir. 1994).  The Sixth Circuit offered the following illustration:

> [I]f one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness.  Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee.  Conceivably, even if he had never seen a bumblebee, he still would be qualified to testify, as long as he was familiar with its component parts.
>
> On the other hand, if one wanted to prove that bumblebees always take off in the wind, a beekeeper with no scientific training at all would be an acceptable witness *if* a proper foundation were laid for his conclusions.  The foundation would not relate to his formal training, but to his firsthand observations.  In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have.

5

*Id.* An expert witness must satisfy "the minimal qualifications requirement," but he isn't required to "teach a graduate seminar on the subject." *Burgett*, 579 F. App'x at 377 (citing *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981)). And, in the Sixth Circuit, courts "take a liberal view of what 'knowledge, skill, experience, training, or education' is sufficient" to meet Rule 702's qualification requirement. *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208-09 (6th Cir. 2015) (quoting *Pride*, 218 F.3d at 577).

Mr. Baker is qualified to offer an expert opinion on causation, even though he lacks formal training as an engineer. Over the course of his decades-long career, Mr. Baker has been involved in the construction, repair, and inspection of more than 5,600 homes, buildings, and structures. (Doc. # 37-1 ¶¶ 3-8). He spent eleven of those years as a catastrophe claims adjuster. (*Id.* ¶ 4). And Mr. Baker presently owns a firm that specializes in roofing, siding, gutters, windows, and general storm damage restoration. (Doc. # 44-1 at 3). Allstate even acknowledges that Mr. Baker may be qualified to testify as an expert on "tree damage generally[.]" (Doc. # 37 at 3). However, Allstate argues that Mr. Baker lacks qualifications to address the "energy transfer" of the fallen tree at issue here. (*Id.*). While fluency in the principles of engineering could be helpful in evaluating the causation issues in this case, Mr. Baker's lack of credentials goes to the weight of his opinion, rather than its admissibility. *See Garcia v. Alticor, Inc.*, No. 1:20-cv-1078, 2024 WL 4434657, at *4 (W.D. Mich. Apr. 16, 2024) ("An expert need not be a specialist in every subject to which their testimony might relate.") (citing *Counts v. Gen Motors, LLC*, 606 F. Supp. 3d 547, 568 (E.D. Mich. 2022)). Mr. Baker's decades of experience in the storm restoration, catastrophe insurance, and general contracting

6

industries equip him with the knowledge required to opine on the cause of the damage at issue in this case.

### 2. *Relevance*

Next, Allstate argues that Mr. Baker's proposed opinion fails Rule 702's relevancy requirement. (Doc. # 37 at 3-4). "To determine whether an expert's testimony will be relevant, we look to whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (internal citations omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citation omitted). The relevancy of an expert's opinion depends on the claims before the Court. *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020). "Thus, when analyzing the relevancy of expert testimony, a court should consider the elements that a plaintiff must prove." *Id.*

In making its critique, Allstate conflates the reliability and qualification prongs with Rule 702's relevancy inquiry. Allstate argues that Mr. Baker's "experience as a general contractor does not qualify him to give relevant testimony regarding engineering principles such as structural movement and energy transfer." (Doc. # 37 at 4). This objection, however, questions Mr. Baker's qualifications to testify as an expert, not the relevancy of his testimony. But, as explained above, Mr. Baker possesses adequate experience and knowledge to testify as an expert in this case. Allstate also claims that Mr. Baker's testimony will not aid the jury in resolving the causation disputes involved in this case because Mr. Baker will "likely provide conclusory statements that the damage occurred

7

as a result of the storm because there was a tree on the house." (*Id.*). Again, this argument is misplaced. The thoroughness of Mr. Baker's opinion goes to its reliability, not its relevance.

The Court agrees with Plaintiff that "Mr. Baker's testimony directly addresses the central factual dispute in this case: whether the tree strike caused structural damage to Plaintiff's home." (Doc. # 46 at 9). Banks claims that Allstate breached its insurance contract by failing to issue payment for storm-related damage caused by the fallen tree. (*Id.*). Allstate, on the other hand, asserts that this damage—which includes damage to the home's brick veneer, cracks in the masonry, and displacement of the deck— preexisted the tree strike. (*See* Doc. # 38 at 2; Doc. # 38-1 at 4-5). As a result, Allstate maintains that it has no duty to indemnify Banks for related claims. (*Id.*). Mr. Baker's opinion that the tree's impact with the Banks home *did* cause this damage bears directly on the claims at issue in this case. Further, Mr. Baker's proposed testimony exceeds the ken of an untrained layman. Indeed, Mr. Baker proposes to explain how the construction of Banks's house, including the erection of its load-bearing components, facilitated the damage caused by the tree impact. (*See* Doc. # 44 at 18:22-19:14). Consequently, his proposed opinion is relevant.

### 3.    Reliability

The final hurdle for Mr. Baker's proposed opinion is reliability. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30 (citations omitted). In *Daubert*, the Supreme Court identified four factors for

8

assessing the reliability of expert testimony: (1) whether the theory or technique can be or has been tested, (2) whether it has been subjected to peer review and publication, (3) whether a technique has a high rate of error, and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (quoting *Daubert*, 509 U.S. at 593-94). However, the Supreme Court subsequently clarified that "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Indeed, "[t]he Court does not have to assess reliability based on the traditional *Daubert* factors of testing, methodology, and application of principles when the expert is an expert from experience and not an expert who conducted additional testing or research." *Barber v. Milbank Ins. Co.*, No. 5:21-cv-213-KKC-EBA, 2022 WL 13888469, at *2 (E.D. Ky. Oct. 19, 2022) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529). Rather, when a party challenges the reliability of an experience-based expert, the relevant question is "whether there is sufficient factual basis to raise the proffered testimony above that of assumptions, guesses, and mere speculation." *Id.* (citing *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000)).

Here, Allstate argues that Mr. Baker's causation testimony is unreliable because he "fail[s] to acknowledge any basis for his conclusions other than to state he inspected the home and he has experience." (Doc. # 37 at 4). Moreover, Allstate claims that Mr. Baker's "testimony does nothing to explain how he made his conclusions or any type of chain of reasoning." (*Id.* at 4-5 (citing *Blankenship v. State Farm Fire & Cas. Co.*, No. 21-cv-70-DLB-EBA, 2023 WL 2637358 (E.D. Ky. Mar. 24, 2023))). Allstate likens Mr. Baker's

9

proposed opinion to that at issue in *Blankenship v. State Farm Fire & Casualty Co.* (*Id.* at 5). In *Blankenship*, this Court excluded a general contractor's causation opinion because it "relied almost exclusively on [the plaintiff's] self-serving speculation . . . which is simply not a reliable foundation[.]" 2023 WL 2637358, at *3. Additionally, the *Blankenship* expert simply deferred to his "personal review of the damage to the house, [the plaintiff's] statements, and his own professional experience with 45 years as a contractor" as the basis for his opinion. *Id.* But this did "nothing to explain *how* [the *Blankenship* expert] made his conclusions, *e.g.*, his chain of reasoning." *Id.* As a result, this Court deemed the proposed opinion in *Blankenship* little more than "scientific guesswork" which failed to meet Rule 702's demands. *Id.*

To start, Mr. Baker clearly identifies the foundation for his opinions. Mr. Baker's testimony relies principally on his own examination of Banks's home, which involved several extensive walkthroughs. (Doc. # 44 at 23:1-3). This differs from the *Blankenship* expert, who "repeatedly acknowledged that his opinion [was] based on [the plaintiff's] statements and that he did not even know whether the storm occurred." 2023 WL 2637358, at *2. Mr. Baker, on the other hand, personally examined the property on multiple occasions, reviewed camera footage of the tree falling on Banks's house, and examined photographs of the house's interior taken prior to the storm. (Doc. # 44 at 23:1-3; 19:21-20:14).

Mr. Baker's testimony differs from the *Blankenship* expert's in another decisive aspect—Mr. Baker has explained the chain of reasoning behind his opinion. When asked at his deposition how the impact of the tree caused the disputed damage to Banks's home, Mr. Baker offered a reasoned explanation. (*See* Doc. # 44 at 18:22-19:14). Mr.

10

Baker noted that the size and species of the tree allowed him to approximate its weight. (*Id.* at 19:1-3).  And he observed that, "the way that it fell across the roof, it impacted the trusses, the wall plates, as well as the ridge beams[.]"  (*Id.* at 19:3-5).  Mr. Baker continued to reason that each one of these impact points "will allow for energy transfer directly to the foundation and the subsequent building components on the exterior of the home" because they "are load bearing points . . . designed to transfer energy."  (*Id.* at 19:6-11). Finally, Mr. Baker concluded that because these impact points are "designed to bear and transfer weight, then that's the – typically the natural path that the energy is going to follow."  (*Id.* at 19:12-14).  Although Mr. Baker acknowledged that he does not have an engineering background, he stated that his opinion was based on his experience in the contracting, catastrophe insurance, and disaster repair industries.  (*Id.* at 19:17-18).  Mr. Baker offered similarly detailed explanations for his opinions concerning damage to other parts of the property.  (*See id.* at 50:11-15 (explaining that the tree impact damaged a water pipe "[b]ecause it's directly under where the tree impacted and those reverberations go straight down the – the wall into the foundation"); *id.* at 21:1-18 (explaining his opinion that cracks in walls and damage to a door were caused by the tree impact and were not pre-existing)).  Because Mr. Baker has explained how and why he reached his opinions, Allstate's reliance on *Blankenship* is inapposite.  This chain of reasoning tips the scale toward a finding of reliability.

As Allstate acknowledges, "the question of reliability boils down to whether there is sufficient factual basis to raise the proffered testimony above that of assumptions, guesses, and mere speculation."  (Doc. # 37 at 5 (internal quotation omitted)).  Mr. Baker has described the specific evidence and observations he utilized in formulating his

11

opinions and he laid out the reasoning behind his conclusions. Consequently, to the extent Allstate challenges Mr. Baker's opinion, his "theories can be effectively disputed in court." *Dais Elecs. Co., Inc. v. Springer Cap., LLC*, 558 F. Supp. 3d 443, 451 (W.D. Ky. 2021). While the Court appreciates its gatekeeping function under Rule 702, it remains mindful of the Advisory Committee's observation that "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee Notes, 2000 amend.

Because Mr. Baker's experience qualifies him to opine on the causation issues at issue and because his opinion meets the threshold relevancy and reliability requirements, Rule 702 does not bar his testimony. As a result, Allstate's Motion (Doc. # 37) is **denied**.

## III.   MOTION FOR PARTIAL SUMMARY JUDGMENT

In addition to its Motion to Exclude, Allstate has also moved for partial summary judgment. (Doc. # 38). More specifically, Allstate seeks judgment in its favor on Plaintiff's contractual claims related to damage to the brick veneer of her house. (*Id.* at 2).

### A.   Standard of Review

Federal Rule of Civil Procedure 56 allows for a grant of summary judgment when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Thus, the moving party bears the burden of showing an absence of a genuine issue of material fact. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In adjudicating a motion for summary

judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If the movant satisfies his initial burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* At this stage, the Court must not weigh the evidence or make credibility determinations. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 249). Rather, the Court must ascertain whether there is a genuine issue for trial. *Id.* In making this determination, the Court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## B. Analysis

Allstate's Motion for Partial Summary Judgment hinges on a single question: Is it possible—as Allstate claims—to repair the damage caused to the brick veneer of Banks's house by replacing only the individual bricks actually damaged by the tree impact? (*See* Doc. # 38 at 5). Or does replacing the damaged bricks require replacing the entire brick veneer—as Banks maintains? (*See* Doc. # 45 at 5).

Because this Court sits in diversity, Kentucky law governs its interpretation of the Policy. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008) (citations omitted). In Kentucky,

> Terms of insurance contracts have no technical meaning in law and are to
> be interpreted according to the usage of the average man and as they would

13

be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured. But this rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the plain meaning and/or language in the contract. When the terms of an insurance contract are unambiguous and not unreasonable, they will be enforced.

*Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005) (internal quotations omitted). The party seeking to establish coverage under an insurance contract bears the burden of establishing that the incident at issue was within the scope of the policy. *North American Acc. Ins. Co. v. White*, 80 S.W.2d 577, 578 (Ky. 1935).

Here, the Policy provides, in relevant part, that Allstate "will cover sudden and accidental direct physical loss to property . . . ." (Doc. # 38-4 at 30). However, the Policy expressly excludes physical loss that is the result of "[w]ear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect." (*Id.* at 32). And the Policy explains that:

In the event of a covered loss, [Allstate has] the option to:

a) Repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) Pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5, "How We Pay For A Loss."

(*Id.* at 41).

Banks does not contend that this language is ambiguous or uncertain. She does not argue that Allstate must replace the undamaged bricks on her house because they were damaged by the tree impact or years of wear and tear. Rather, she claims that Allstate must pay to replace the entire brick veneer of her home because "the damaged bricks cannot be reasonably replaced without creating additional physical problems and

14

without leaving the home in a materially different condition." (Doc. # 45 at 5).  Separately, Banks argues, there is a genuine dispute as to whether it is even possible to replace the damaged bricks with material of "like kind and quality" which the Policy requires.  (*Id.* at 6).  Allstate, on the other hand, claims that Banks seeks to impose a "matching" rule that would obligate Allstate to replace bricks that were not damaged by the tree impact to achieve aesthetic uniformity.  (Doc. # 38 at 6).  Because the Policy only covers "sudden and accidental direct physical loss to property," Allstate concludes that it cannot be required to repair or replace bricks that were not damaged by the tree impact.  (*Id.*).  Furthermore, Allstate asserts that it is entitled to summary judgment because "[t]here is zero evidence that the [damaged] bricks cannot be replaced according to the terms of the Policy[.]"  (*Id.*).

Allstate cites *Woods Apartments, LLC v. U.S. Fire Ins. Co.* as an analogous case. (Doc. # 38 at 6).  In *Woods*, a court in the Western District of Kentucky evaluated an insurance policy that required the insurer to repair or replace the damaged portions of a roof and siding with property of a "comparable material and quality relative to the undamaged portions."  No. 3:11-cv-41-H, 2013 WL 3929706, at *2 (W.D. Ky. July 29, 2013).  The *Woods* court rejected the notion that the plaintiffs were entitled to replacement of undamaged portions of the roof and siding merely to "achieve cosmetic matching[.]" *Id.*  Rather, the *Woods* court held that, if the insurer could repair the damaged areas with "comparable or similar materials," the insurer was "not obligated to replace undamaged portions."  *Id.*  Because the *Woods* plaintiffs had "not proffered any evidence of the unavailability of comparable or similar material," the court rejected the plaintiffs' "matching argument."  *Id.*  Other courts, applying Kentucky law, have also rejected aesthetic

"matching" theories involving similar contractual language.  *See, e.g., Nationwide Gen. Ins. Co. v. 1616 Gardiner Lane, Inc.*, No. 3:20-cv-651-GNS-CHL, 2021 WL 2459473, at *4 (W.D. Ky. June 16, 2021) (holding that insurer was not required to replace undamaged shingles because the insured had not identified any evidence "that it is impossible to replace any shingles with similar material") (quotation omitted); *Advanced Mech. Servs. Inc. v. Auto-Owners Ins. Co.*, No. 3:14-cv-388-DJH-CHL, 2017 WL 3381366, at *8 (W.D. Ky. Aug. 4, 2017); *Cincinnati Specialty Underwriters Ins. Co. v. C.F.L.P. 1, LLC*, No. 3:14-cv-40-DJH-DW, 2015 WL 5793951, at *6 (W.D. Ky. Sept. 30, 2015).

Banks, however, argues that Allstate's focus on aesthetic "matching" misses the mark.  She claims that the real question is "whether full replacement of the brick veneer is necessary because the damaged bricks cannot be reasonably replaced without creating additional physical problems and without leaving the home in a materially different condition."  (Doc. # 45 at 5).  Indeed, Banks points to Mr. Baker's opinion that replacing only the bricks damaged by the tree impact would not amount to a "proper repair."  (*Id.*).  Although Mr. Baker agreed with Allstate's experts that only a handful of bricks were directly damaged by the tree, he opined that isolated replacement of these bricks would not adequately restore the house to its pre-storm condition.  (*See* Doc. # 44 at 40:5-24).   Mr. Baker stated that replacing individual bricks would render the surrounding mortar joints unstable due to differences between the mortar that was used during construction and modern mortar.  (*Id.* at 36:7-37:6).  This reduction in integrity, Mr. Baker concluded, would not restore the Banks's house to the condition it was in before the tree impact.  (*Id.* at 37:15-21).  As a result, Banks reasons, replacing only the damaged bricks would not constitute a "repair" or "replacement" as contemplated by the

16

Policy.  (Doc. # 45 at 6).  Allstate's expert witnesses reject Mr. Baker's opinion and state that replacing the entire brick veneer is unnecessary and that the individual bricks may be replaced without inflicting structural damage.  (Doc. # 44 at 40:9-20).

This disagreement creates a genuine issue of material fact that precludes partial summary judgment.[1]  Allstate acknowledges that it is contractually obliged to "repair or replace" the bricks and mortar damaged by the tree impact with property "of like kind and quality."  (Doc. # 38 at 5).  But Banks claims that, due to the structural issues identified by Mr. Baker, the only way to adequately "repair, replace, or rebuild" the damaged bricks covered by the Policy is to rebrick the entire house.  (Doc. # 45 at 5).  Thus, Banks is not advancing the same "aesthetic matching" argument at issue in *Woods* or the other cases cited by Allstate.  *See* 2013 WL 3929706, at *2.  Rather, Banks argues that it is impossible to adequately replace the individual damaged bricks because of, among other things, differences in mortar that would compromise structural integrity.  (Doc. # 45 at 5-6). Allstate correctly notes that Banks has no right, under the Policy, to replace otherwise undamaged bricks on the basis that they have degraded due to ordinary wear and tear. (Doc. # 38 at 5).  However, this misconstrues the nature of Banks's claim—that adequately replacing the eight bricks damaged by the tree impact is *impossible* without rebricking the entire house.  (Doc. # 45 at 5-6). And Banks has pointed to evidence—the deposition testimony of Mr. Baker—that the only way to replace or repair the bricks damaged by the tree impact involves replacing the brick veneer.  (*Id.*).  Thus, the contractual sufficiency of Allstate's proposed repair depends on whether Mr. Baker or

---

[1]   Allstate does not challenge Mr. Baker's proffered expert opinion under Federal Rule of Evidence 702—at least as it pertains to his opinions regarding the proper manner or method of repairing the brick veneer of the Banks's house.

17

Allstate's experts are to be believed.  This presents a fundamentally factual question best answered by a jury.[2]  Accordingly, Allstate's Motion for Partial Summary Judgment (Doc. # 38) must be **denied**.

## IV.    CONCLUSION

Thus, for the reasons stated herein, **IT IS ORDERED** that:

(1)    Defendant's Motion to Exclude Causation Testimony of Tyler Baker (Doc. # 37) is **DENIED**;

(2)    Defendant's Motion for Partial Summary Judgment (Doc. # 38) is **DENIED**; and

(3)    The parties are **DIRECTED** to file a **Joint Status Report within thirty (30) days from the date of entry of this Order** indicating whether they would be amenable to pursuing mediation, either privately or facilitated by the court, as to the remaining claims.

(4)    Upon receipt of the Status Report referenced in paragraph (3), the Court will enter a follow-up pretrial order addressing next steps in this case.

This 31st day of July, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

---

[2]    In its Reply, Allstate argues that the Court should not consider Mr. Baker's "vague and conclusory testimony that the individual bricks simply cannot be replaced."  (Doc. # 49 at 3). However, as discussed above, Mr. Baker provided a reasoned explanation for his opinion that replacing the individual bricks would not repair the damage to the brick veneer of the Banks's house.  (*See* Doc. # 44 at 37:13-21, 41:8-20).  And Allstate does not challenge Mr. Baker's experience or qualification to render such an opinion.  Accordingly, the Court rejects Allstate's characterization of Mr. Baker's opinion as "vague and conclusory."